# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| Deborah Orlando Cooney, Rhonda Griffith-Kraut, | ) | |
| Julia Bornhuetter-Colloton, and Others Similarly | ) | |
| Situated, | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 07 C 2747 |
| | ) | |
| Lyle Rossiter, Jr., M.D., et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Presently before us are multiple motions to dismiss and motions to transfer venue filed by the defendants. For the reasons stated below, we dismiss this action in its entirety and deny the motions to transfer venue as moot.

## BACKGROUND

Plaintiffs Deborah Orlando Cooney, Rhonda Griffith-Kraut, and Julia Bornhuetter-Colloton (collectively, "Plaintiffs") initially filed this purported class action on May 16, 2007, claiming that the various defendants violated their rights under the U.S. Constitution by engaging in misconduct during the Plaintiffs' individual state-court custody proceedings. Defendants then filed motions to dismiss and/or motions to transfer venue. Rather than respond to those motions, Plaintiffs requested voluntary dismissal pursuant to Federal Rule of Civil Procedure 41(a)(2), which we permitted.

On January 7, 2008, Plaintiffs filed their Amended Class Action Complaint ("Complaint") against the current twelve defendants, who played some role in the custody proceedings. Each of

the defendants has filed or renewed a motion to dismiss, and seven additionally seek to transfer venue of the case to the Northern District of Illinois, Western Division. In their motions to dismiss, defendants primarily contend that: (1) the *Rooker-Feldman* doctrine deprives us of jurisdiction over Plaintiffs' claims; (2) the particular defendant is immune from suit; (3) the Complaint fails to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6); and (4) the Complaint does not comply with Federal Rules of Civil Procedure 8 and 10. We address each issue as necessary below.

## STANDARD OF REVIEW

The purpose of a motion to dismiss under either Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6) is to test the sufficiency of the complaint, not to decide the merits of the case. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). Rule 12(b)(1) requires dismissal of claims over which the federal court lacks subject matter jurisdiction. Jurisdiction is the "power to decide," and must be conferred upon the federal courts. *In re Chi., Rock Island & Pacific R.R. Co.*, 794 F.2d 1182, 1188 (7th Cir. 1986). The plaintiff faced with a 12(b)(1) motion to dismiss bears the burden of proving that the jurisdictional requirements have been met. *Kontos v. U.S. Dep't of Labor*, 826 F.2d 573, 576 (7th Cir. 1987).

A court may grant a motion to dismiss under Federal Rule of Procedure 12(b)(6) only if a complaint lacks "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007); *see Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618-19 (7th Cir. 2007); *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776-77 (7th Cir. 2007). A sufficient complaint need not give "detailed factual allegations," but it must provide more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 127 S. Ct. at 1964-65; *Killingsworth*, 507 F.3d at 618-19. These requirements ensure that

the defendant receives "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 127 S. Ct. at 1964 (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 102 (1957)); *see also* Fed. R. Civ. P. 8(a). In evaluating a motion to dismiss, we must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Thompson v. Ill. Dep't of Prof'l Reg.*, 300 F.3d 750, 753 (7th Cir. 2002).

## ANALYSIS

### I. *Rooker-Feldman*

We first address the *Rooker-Feldman* jurisdictional argument raised by various defendants. Simply put, the *Rooker-Feldman* doctrine precludes individuals from seeking review of state court judgments in federal district court. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 414 (1923); *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 465, 103 S. Ct. 1303, 1306 (1983); *see also Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 125 S. Ct. 1517, 1521-22 (2005). This doctrine exists because "no matter how erroneous or unconstitutional the state court judgment may be, the Supreme Court of the United States is the only federal court that could have jurisdiction to review a state court judgment." *Taylor v. Fed. Nat'l Mortgage Ass'n*, 374 F.3d 529, 532 (7th Cir. 2004) (internal quotation omitted); *see also Brokaw v. Weaver*, 305 F.3d 660, 664-65 (7th Cir. 2002). As the Seventh Circuit explained, "the Rooker-Feldman doctrine asks: is the federal plaintiff seeking to set aside a state judgment, or does [s]he present some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which [s]he was a party?" *Gash Assocs. v. Vill. of Rosemont, Ill.*, 995 F.2d 726, 728 (1993) (internal citations omitted). If the former, and provided that the plaintiff has an opportunity to present her claims to the state court, the federal court lacks jurisdiction. *Id.*

Although the *Rooker-Feldman* doctrine might seem to bar Plaintiffs' claims at first glance, we find it inapplicable at this juncture in the case. The Supreme Court in *Exxon* emphasized that *Rooker-Feldman* applies only to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobile Corp.*, 544 U.S. at 284, 125 S. Ct. at 1521-22. Interpreting *Exxon*, the Seventh Circuit noted that "the doctrine only applies to cases like *Rooker* and *Feldman* where 'the losing party in state court filed suit in federal court *after the state proceedings ended.*'" *Truserv Corp. v. Flegles, Inc.*, 419 F.3d 584, 591 (7th Cir. 2005) (quoting *Exxon* (emphasis added)). Indeed, "[u]nder the *Rooker-Feldman* doctrine post-*Exxon*, timing is everything." *In re Hodges*, 350 B.R. 796, 803 (Bankr. N.D. Ill. 2006) (internal quotation omitted).

Here, however, the Complaint does not suggest that the state-court judgments related to Plaintiffs' constitutional allegations have concluded. To the contrary, the Complaint indicates that the divorce and custody proceedings remain ongoing in the state system. Although some of the orders challenged by Plaintiffs were issued years ago, these orders are not necessarily final. Plaintiffs frequently describe critical orders of protection and for transfer of custody as "emergency" or "interim" in nature, suggesting that they remain subject to change. Moreover, each case remains pending, further suggesting that these orders may be amended, or appealed to the Illinois appellate courts once the divorce and concomitant custody decisions become final. Accordingly, based on our reading of the Complaint, we conclude that *Rooker-Feldman* does not bar Plaintiffs' federal

claims at this time.[1]

## II.     Immunity

Although *Rooker-Feldman* is not outcome-determinative, various defendants have also asserted that they are immune from this litigation in their official or individual capacities, or both.[2] We address each argument in turn.

### A.     Eleventh Amendment Immunity

Several defendants (namely, Judge Nordquist and the Illinois Department of Children and Family Services ("DCFS")) argue that the Eleventh Amendment immunizes them from suit in their official capacities. Indeed, to the extent that Plaintiffs bring this action against agencies of the State of Illinois, or state employees in their official capacities, such claims must fail.

The Supreme Court "has consistently held that an unconsenting state is immune from suits

---

[1] We also have considered whether other abstention doctrines might preclude Plaintiffs' claims and determine that none apply. For example, the domestic relations exception to federal jurisdiction set forth in *Ankenbrandt v. Richards* is not relevant because Plaintiffs do not allege diversity jurisdiction and, moreover, Plaintiffs are not explicitly seeking relief from a custody or ancillary decree. 504 U.S. 689, 703-04, 112 S. Ct. 2206, 2215 (1992). In addition, *Younger* abstention is not appropriate because the state of Illinois is not itself a party to (even if it has an interest in) the underlying state court proceedings. *Younger v. Harris*, 401 U.S. 37, 44-46, 91 S. Ct. 746, 750-52 (1971); *see Forty One News, Inc. v. Cty. of Lake*, 491 F.3d 662, 665 (7th Cir. 2007) (stating that "*Younger* abstention is appropriate only when there is an action in state court against the federal plaintiff and the state is seeking to enforce the contested law in that proceeding"); *see, e.g., Stroman Realty, Inc. v. Grillo*, 438 F. Supp. 2d 929, 933-34 (N.D. Ill. 2006) (abstaining under *Younger* where plaintiff asked the federal court to stay administrative proceedings brought by Illinois against him for alleged violations of real estate licensing statute); *Borum v. Bonk*, No. 99 C 2069, 2000 WL 263958, at *1-2 (N.D. Ill. Feb. 29, 2000) (abstaining where state agency initiated custody proceedings on behalf of allegedly abused children).

[2] The Complaint does not indicate whether Plaintiffs are suing individual defendants in their personal or official capacities, and we shall address both.

brought in federal courts by her own citizens."[3] *Edelman v. Jordan*, 415 U.S. 651, 662-63, 94 S. Ct. 1347, 1355 (1974); *see Peirick*, 510 F.3d at 694-96; *Ameritech Corp. v. McCann*, 297 F.3d 582, 585-86 (7th Cir. 2002). "State agencies and officials sued in their official capacities are 'the state' for Eleventh Amendment purposes." *Olison v. Ryan*, No. 99 C 4384, 2000 WL 1263597, at *4 (N.D. Ill. Sept. 5, 2000) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 2312 (1989)). Thus, pursuant to the Eleventh Amendment, we lack jurisdiction over claims against such defendants, including individual defendants sued in their official capacities.

## I.    DCFS

Without question, DCFS is a state agency and is entitled to Eleventh Amendment immunity from § 1983 suits. *Ryan v. DCFS*, 185 F.3d 751, 758 (7th Cir. 1999); *Gossmeyer v. McDonald*, 128 F.3d 481, 495 (7th Cir. 1997). Accordingly, all claims against DCFS through its Acting Director, Edwin McEwen, are dismissed. Official-capacity claims against DCFS employees, including Edwin McEwen and Brent Johnson, are also barred. *Gossmeyer*, 128 F.3d at 495.

## ii.    Judges

For similar reasons, both Judge Nordquist and Administrative Law Judge Daniel Baechle ("ALJ Baechle") are immune from claims against them in their official capacities. Claims for damages against Judge Nordquist (a judge for the State of Illinois) and ALJ Baechle (a DCFS judge) "are barred by the sovereign immunity of [their] employer[s]." *Nowicki v. Cooper*, 56 F.3d 782, 784

---

[3] While three exceptions to this rule exist, none are relevant here. *Peirick v. Ind. Univ.-Purdue Univ. Indianapolis Athletics Dep't*, 510 F.3d 681, 695 (7th Cir. 2007). The State of Illinois has not waived its immunity by consenting to suit in federal court for § 1983 claims and Congress has not expressly abrogated Illinois' immunity through its own action. *Id.* Moreover, Plaintiffs do not seek prospective equitable relief pursuant to *Ex Parte Young*. 209 U.S. 123, 159-60, 28 S. Ct. 441 (1908); *see Peirick*, 510 F.3d at 695. To the contrary, Plaintiffs seek money damages. (Compl. at 41.)

(7th Cir. 1995) (affirming dismissal of official-capacity claim seeking damages from a Wisconsin state judge); *Vance v. Watts*, No. 06 CV 1107, 2007 WL 924259, at *2 (C.D. Ill. Mar. 27, 2007) (dismissing official-capacity suit for money damages against referee for a state agency); *Carrillo v. Chambers*, No. 05 C 686, 2007 WL 257634, at *3-4 (N.D. Ill. Jan. 22, 2007) (dismissing § 1983 damages claims against state-court judges under Eleventh Amendment); *Olison*, No. 99 C 4384, 2000 WL 1263597, at *4 (same).

### iii. *State's Attorney Paul Logli*

The Eleventh Amendment also precludes an official-capacity suit against an Illinois state's attorney. The Seventh Circuit has repeatedly noted that, under Illinois law, "state's attorneys are state officials." *Hernandez v. Joliet Police Dep't*, 197 F.3d 256, 265 (7th Cir. 1999); *Garcia v. City of Chi.*, 24 F.3d 966, 969 (7th Cir. 1994). Accordingly, defendant Paul Logli – a former state's attorney in Winnebago County – is shielded from an official-capacity suit seeking monetary damages.

## B. Absolute Immunity

Certain defendants contend, moreover, that they are absolutely immune from suit given their judicial or quasi-judicial role in the challenged custody proceedings.

### I. *Judges*

In addition to the Eleventh Amendment immunity discussed above with respect to official-capacity suits, Judge Nordquist and ALJ Baechle are entitled to absolute judicial immunity. "Although unfairness and injustice may result on occasion, 'it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal

consequences to himself.'" *Mireles v. Waco*, 502 U.S. 9, 10, 112 S. Ct. 286, 287 (1991) (quoting *Bradley v. Fisher*, 80 U.S. 335, 347, 20 L.Ed. 646 (1872)). Accordingly, judges are entitled to absolute immunity if they: (1) performed the questioned acts in their judicial capacity; and (2) had the jurisdiction to do so. *See Mireles*, 502 U.S. at 11-12, 112 S. Ct. at 288; *Stump v. Sparkman*, 435 U.S. 349, 356-57, 98 S. Ct. 1099, 1104-06 (1978); *Richman v. Sheahan*, 270 F.3d 430, 434 (7th Cir. 2001); *Brokaw v. Mercer Cty.*, 235 F.3d 1000, 1015 (7th Cir. 2000); *Davit v. Davit*, 366 F. Supp. 2d 641, 658-59 (N.D. Ill. 2004). Such immunity will extend "even if the action was in error, was done maliciously, was in excess of [the judge's] authority, and even if [the] exercise of authority is flawed by the commission of grave procedural errors." *Brokaw*, 235 F.3d at 1015 (internal citations omitted). This doctrine applies equally to lawsuits brought under § 1983. *Stump*, 435 U.S. at 355, 98 S. Ct. at 1104; *see, e.g., Dellenbach v. Letsinger*, 889 F.2d 755, 758-59 (7th Cir. 1989) (reviewing five considerations advanced by the Supreme Court in support of absolute judicial immunity).

### a.    Judge Nordquist

Here, Plaintiffs allege *inter alia* that Judge Nordquist committed various procedural errors, issued orders that violated their constitutional rights, failed to timely rule on motions and, particular to Plaintiff Cooney's custody proceedings, refused to recuse himself permanently and altered the official court docket. (*See* Compl. ¶¶ B, H, N at 3, 5-6, 15-16 (general allegations); *id.* ¶¶ 3-7, 13-14 at 20-22, 24-25 (concerning Cooney); *id.* ¶¶ 3, 5, 8, 10, 14-17 at 26-28 (concerning Bornhuetter-Colloton); *id.* ¶¶ 1-2, 6, 12-13 at 28-29, 31, 33 (concerning Griffith-Kraut).) They allege that Judge Nordquist entertained motions and issued certain orders without notice, without proper hearings and without affording Plaintiffs their right to present witnesses or other evidence. They further allege

that Judge Nordquist acted in concert with Defendants Rossiter, Bischoff, and Cain to commit these constitutional violations. (*Id.* ¶¶ 3-8 at 35-37.)

Despite the breadth and weight of these allegations, Plaintiffs have not alleged that Judge Nordquist acted outside his authority. The misconduct described by Plaintiffs concerns actions "taken in the judge's judicial capacity." *Mireles*, 502 U.S. at 11; 112 S. Ct. at 288. Looking as we must to the nature of the acts alleged, it is clear that the substance and timing of Judge Nordquist's rulings, including all of the contested custody orders and evidentiary rulings, fall within the normal functions of a judge. *Id.* at 12-13 (reiterating that "the relevant inquiry is the nature and function of the act, not the act itself") (internal quotations omitted).

Moreover, Judge Nordquist did not exceed the bounds of his jurisdiction in engaging in this conduct. Contrary to Plaintiffs' claim, absolute judicial immunity does preclude litigation against judges, *even where bad faith is alleged*. (Compl. ¶¶ 1-2 at 30-31.) *See, e.g., Forrester v. White*, 484 U.S. 219, 227, 108 S. Ct. 538, 544 (1988) (noting that a judicial act "does not become less judicial by virtue of an allegation of malice or corruption of motive"); *Newman v. State of Ind.*, 129 F.3d 937, 942 (7th Cir. 1997) ("Immunity washes out errors, but absolute immunity washes out bad motives."). Although Plaintiff Cooney, in her response brief, argues that Judge Nordquist lacked jurisdiction on July 9, 2004 to vacate an order of protection against her ex-husband and reduce the amount of bail bonds issued by a Cook County judge, the Complaint belies this claim. (Docket No. 251, Resp. to Nordquist MTD ¶ 25.) In the Complaint, which is the operative pleading, Plaintiffs specifically allege that the Cook County case was transferred to Winnebago County on July 1, 2004 to be consolidated with Plaintiff Cooney's pending divorce proceedings. (Compl. ¶ 7 at 21-22 & Group Ex. 40 at 1034-35.) According to the Complaint, Judge Nordquist thus had jurisdiction of

the related criminal matter when he issued the July 9, 2004 orders. Plaintiffs have not identified any

alleged misconduct that would fall outside Judge Nordquist's functions or jurisdiction and thus, he

is entitled to absolute immunity from suit.

### b. ALJ Baechle

ALJ Baechle is similarly shielded from this litigation based on his quasi-judicial role.

> Absolute judicial immunity is not confined to judges alone. It extends to those "who
> perform functions closely associated with the judicial process" . . . both prosecutors
> and witnesses in judicial proceedings, and both administrative law judges and
> executive hearing officers who perform adjudicatory duties "functionally
> comparable" to those of a judge.

*Williams v. Rath*, 756 F. Supp. 1103, 1105-06 (N.D. Ill. 1991) (internal citations omitted); *see Butz*

*v. Economou*, 483 U.S. 478, 513-14, 98 S. Ct. 2894, 2914-15 (1978) (reviewing functions of a

federal ALJ within framework of agency adjudication and concluding that the role of an ALJ is

"functionally comparable to that of a judge"); *see also Reese v. May*, 955 F. Supp. 869, 876 (N.D.

Ill. 1996). "In order for quasi-judicial officials to be granted absolute judicial immunity, their acts

must reflect the essence of judicial decision-making and involve discretion of a judicial nature."

*McMillan v. Svetanoff*, 793 F.2d 149, 151 (7th Cir. 1986); *see Doyle v. Camelot Care Ctrs., Inc.*, 305

F.3d 603, 621-22 (7th Cir. 2002) (holding that Chief ALJs for DCFS were entitled to judicial

immunity for their docketing decisions, which constituted "an integral part of the adjudicatory

process"). When evaluating claims for quasi-judicial immunity, courts also consider other factors,

including: "(a) the need to assure that the individual can perform his functions without harassment

or intimidation; (b) the presence of safeguards . . .; (c) insulation from political influence; (d) the

importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error

on appeal." *Cleavinger v. Saxner*, 474 U.S. 193, 202, 106 S. Ct. 496, 501 (1985) (observing that,

following a functional approach, the Supreme Court "has extended judicial immunity to certain others who perform functions closely associated with the judicial process"); *see also Williams*, 756 F. Supp. at 1106 (considering procedural safeguards and holding that Illinois Court of Claims judges are entitled to absolute immunity); *Hernandez-Ortiz v. Godinez*, No. 88 C 5925, 1988 WL 129997, at *1-2 (N.D. Ill. Nov. 30, 1988) (reviewing the above factors and concluding that an immigration judge in deportation proceedings is entitled to absolute immunity).

Plaintiffs allege that ALJ Baechle refused to recuse himself from adversarial proceedings involving Plaintiff Cooney and denied her request to introduce a witness and certain evidentiary materials.  (*See* Compl. ¶¶ F-G, at 5; *see also* Docket No. 255, Resp. to DCFS MTD ¶¶ 3-4, 16-19, 21) (further describing allegations against ALJ Baechle).)  Each of these allegations relate directly to ALJ Baechle's role as a DCFS ALJ and the orders he entered in that capacity.  Pursuant to the Illinois Administrative Code, ALJ Baechle had the authority to, among other things: conduct a hearing; notify participants of their rights and obligations; conduct pre-hearing conferences to discuss procedural issues and narrow the scope of the hearing; "recommend changes in the child abuse and neglect report in the State Central Register; . . . quash or modify subpoenas;" rule on evidentiary as well as substantive legal issues; and render a final DCFS decision.  89 Ill. Admin. Code § 336.120(b).  Accordingly, ALJ Baechle's role is "functionally comparable to that of a judge," thus supporting his claim to immunity.  *Butz*, 483 U.S. at 513-14, 98 S. Ct. at 2914-15.

Moreover, participants in hearings before DCFS ALJs "may seek judicial review of the [DCFS] decision if it is unfavorable to them" as set forth in the Illinois Administrative Review Law. 89 Ill. Admin. Code § 336.220(b); *see* 735 ILCS 5/3-101 *et seq.* (describing procedures for review of agency decision in Illinois Circuit Courts).  Although the ALJ's findings receive deference, the

scope of this review is broad. 735 ILCS 5/3-110. Indeed, "the [Circuit Court] hearing and determination shall extend to all questions of law and fact presented by the entire record before the court." *Id.* The Circuit Court has the power "to affirm or reverse the [DCFS] decision in whole or in part," or to order the DCFS ALJ to conduct further proceedings on remand as needed. *Id.* 5/3-111. Furthermore, "[a] final decision, order, or judgment of the Circuit Court, entered in an action to review a decision of an administrative agency, is reviewable by appeal as in other civil cases." *Id.* 5/3-112. Thus, we find that essential procedural safeguards exist, including several levels of appellate review. As a result, and having considered the various factors stated above, we conclude that ALJ Baechle is absolutely immune from this litigation given his quasi-judicial role.

### ii.       *Court-Appointed Child Representative*

Defendant Kathryn Bischoff served as the guardian at litem ("GAL") appointed by Judge Nordquist to represent the interests of Plaintiffs' children in each of the three custody proceedings. (Compl. ¶¶ C, N at 3, 14.) Throughout the Complaint, Plaintiffs allege a wide variety of misconduct on Bischoff's behalf, including violation of a "gag order," refusal to withdraw as GAL in Plaintiff Cooney's case despite her personal and professional relationship with ALJ Baechle, filing motions and taking other actions to ensure that Plaintiffs would be unable to see their children, and recommending Defendant David Jacobsen despite knowledge that he was not licensed to practice as a psychologist in Illinois. (*Id.* ¶¶ 3, 10 at 20, 23-24 (concerning Cooney); *id.* ¶¶ 2, 4-6 at 26 (concerning Bornhuetter-Colloton).) They also claim that Bischoff prevented Plaintiff Bornhuetter-Colloton's daughters from testifying against their father in a domestic abuse matter and intimidated witnesses scheduled to testify on behalf of Plaintiff Griffith-Kraut. (*Id.* ¶ 9 at 27 (concerning Bornhuetter-Colloton); *id.* ¶ 5 at 30 (concerning Griffith-Kraut).) Plaintiffs allege that, in August

of 2004, Bischoff left town without transferring prescription medication necessary for Griffith-Kraut's daughter and then assisted her ex-husband in obtaining an order of protection against her by providing false testimony and committing fraud upon the court. (*Id.* ¶ 7 at 31-32 (concerning Griffith-Kraut).) Bischoff also allegedly neglected to meet with Plaintiffs' children for extended periods of time and orchestrated a "witch hunt" against Cooney by suggesting that Cooney inflicted Munchausen syndrome on her son. (*Id.* ¶ 11 at 32 (concerning Griffith-Kraut); *id.* ¶ 9 at 37-39 (conspiratorial allegations).)

Bischoff, however, contends that she is immune from such allegations in her role as GAL. Indeed, the Seventh Circuit and courts in our district have agreed, holding that "absent absolute immunity, the specter of litigation would hang over a GAL's head, thereby inhibiting a GAL in performing duties essential to the welfare of the child whom the GAL represents." *Scheib v. Grant*, 22 F.3d 149, 157 (7th Cir. 1994); *see Golden v. Nadler, Pritikin & Mirabelli, LLC*, No. 05 C 0283, 2005 WL 2897397, at *9-10 (N.D. Ill. Nov. 1, 2005); *Offutt v. Kaplan*, 884 F. Supp. 1179, 1192 (N.D. Ill. 1995). The court in *Golden* reviewed the relevant factors set forth by the Supreme Court (and discussed at Section II.B.i.b.) and concluded that "these factors weigh strongly in favor of granting [the GAL] absolute immunity." No. 05 C 0283, 2005 WL 2897397, at *10 (awarding immunity to child representative in state divorce proceeding). In so holding, the *Golden* court noted that "child custody battles can be emotionally charged, and child representatives in contentious cases may be subject to harassment and intimidation if they are not immune from suit." *Id.* We concur and thus grant Bischoff's motion to dismiss on the basis of her absolute immunity. *See Scheib*, 22 F.3d at 157 (granting "court-appointed GAL absolute immunity from lawsuits arising out of statements or conduct intimately associated with the GAL's judicial duties").

### iii.       *Court-Appointed Custodial Evaluators*

In response to Plaintiffs' Complaint, Defendants Lyle Rossiter, Jr., M.D. and David Jacobsen argue that the doctrine of judicial immunity extends to them as well. Judge Nordquist appointed Rossiter and Jacobsen in the Cooney and Bornhuetter-Colloton cases,[4] respectively, to conduct psychological evaluations for his use in resolving the ongoing custody disputes. (*See* Compl. ¶¶ A, N at 2, 15-17 (general allegations); *id.* ¶¶ 3, 13 at 20, 24 (concerning Cooney); *id.* ¶¶ 5-7 at 26-27 (concerning Bornhuetter-Colloton); *id.* ¶¶ 2-4, 9 at 35-39 (conspiratorial allegations).) Plaintiff Cooney claims that Rossiter violated a "gag order," failed to advise her personally of his need for medical records, and furthered the conspiracy with Judge Nordquist and Bischoff to deprive her of her children while making considerable money off of the proceedings. Similarly, Plaintiff Bornhuetter-Colloton alleges that, at the request of a GAL who paid him $1500, Jacobsen issued an addendum to an earlier custodial report, asserting that she should not be reunited with her children. She also alleges that Jacobsen misrepresented his qualifications and, in fact, practiced without a license in Illinois.

Despite the disturbing nature of these allegations, it is well-established that court-appointed psychological evaluators are "protected by the same immunity extended to judges and other judicial officers." *Bartlett v. Weimer*, 268 F.2d 860, 862 (7th Cir. 1959) (affirming dismissal of § 1983 claim against court-appointed physician, who examined mental health of plaintiff and recommended his commitment, on grounds of absolute immunity); *see also Duzynski v. Nosal*, 324 F.2d 924, 928-29 (7th Cir. 1963) (similarly affirming dismissal of case against two doctors who served on court-appointed commission to evaluate plaintiff's mental condition); *Wolff v. Faris*, No. 88 C 10765,

---

[4] Neither played any part in Plaintiff Griffith-Kraut's divorce proceedings.

1989 WL 84718, at *7 (N.D. Ill. July 20, 1989) (citing *Meyers v. Contra Costa Cty. Dep't of Soc. Servs.*, 812 F.2d 1154, 1158-59 (9th Cir. 1987)) (dismissing § 1983 claims against court-appointed conciliators who mediated custody and visitation dispute). Indeed, state and federal courts throughout the country have held that court-appointed evaluators act as "arms of the court" because they fulfill a "quasi-judicial role at the court's request." *Hughes v. Long*, 242 F.3d 121, 126 (3d Cir. 2001) (holding that child welfare workers enjoyed "judicial immunity because they acted as 'arms of the court,' similar to a [GAL] or court-appointed doctor or psychologist"); *see Vernon v. Rollins-Threats*, No. 04 C 1482, 2005 WL 3842821, at *4-6 & n.4 (N.D. Tex. Nov. 2, 2005) (surveying cases and holding that psychologist who testified in child custody case was entitled to immunity, even where plaintiff claimed that psychologist was not licensed or competent); *Duff v. Lewis*, 114 Nev. 564, 568-69, 958 P.2d 82, 85-86 & n.2 (Nev. 1998) (surveying cases and extending judicial immunity to court-appointed psychologist sued by father who lost custody of his sons based on examiner's report); *Vaughan v. McLeod Reg'l Med. Ctr.*, 372 S.C. 505, 511-12 & n.6, 642 S.E.2d 744, 747-48 (S.C. 2007) (surveying cases and concluding that court-appointed physicians, ordered to evaluate individuals for guardianship proceedings, "are essentially an arm of the judiciary" and are judicially immune from suit challenging "acts performed within the scope of the appointment"). Thus, "[s]ocial workers and like public officials are entitled to absolute immunity in child custody cases on account of testimony and other steps taken to present the case for decision by the court." *Millspaugh v. Cty. Dep't of Pub. Welfare of Wabash Cty.*, 937 F.2d 1172, 1176 (7th Cir. 1991) (finding social worker absolutely immune from lawsuit filed by mothers who claimed that she failed to provide the court with certain material favorable to them, neglected to provide notice of hearings, and pursued the litigation for improper motives).

Consistent with these authorities, we hold that Rossiter and Jacobsen are immune from suit based on their quasi-judicial role in Plaintiffs' custody proceedings. Plaintiffs have not alleged any facts or offered any legal authority demonstrating that absolute immunity should not apply in this particular case. To the contrary, various policy reasons compel the extension of judicial immunity to Rossiter and Jacobsen. For example, "[e]xposure to liability could deter [psychologists'] acceptance of court appointments or color their recommendations." *Lavit v. Super. Ct.*, 173 Ariz. 96, 99, 839 P.2d 1141, 1145 (Ariz. App. 1992). In addition, the "[t]hreat of liability could undermine [the] objectivity and independence" so essential to their role and to the overall proceedings, particularly in custody disputes. *Id.*; *see also Lythgoe v. Guinn*, 884 P.2d 1085, 1088-90 (Alaska 1994); *Duff*, 114 Nev. at 569-70, 958 P.2d at 85-87; *Vaughan*, 372 S.C. at 512, 642 S.E.2d at 748. As the Seventh Circuit aptly commented, "a nonjudicial officer who is delegated judicial duties in aid of the court should not be a lightning rod for harassing litigation aimed at the court." *Dellenbach*, 889 F.2d at 763 (internal quotation omitted).

In sum, we find that defendants' claims of judicial or quasi-judicial absolute immunity are well-founded. Accordingly, we grant the motions to dismiss filed by Defendants Judge Nordquist, ALJ Baechle, Bischoff, Rossiter and Jacobsen on this basis.

## III.    Statute of Limitations for § 1983 Claims

Several defendants, including Defendants John Budzynski and Paul Logli,[5] seek dismissal based on the expiration of the applicable statute of limitations period. "Section 1983 claims are subject to the statute of limitations for personal injury actions in the state in which the alleged injury

---

[5] Although Defendants Bischoff and Jacobsen also raise a statute of limitations defense, we need not address their arguments because, as discussed above, they are immune from this litigation.

occurred." *Behavioral Inst. of Ind., LLC v. Hobart City of Common Council*, 406 F.3d 926, 929 (7th Cir. 2005); *see Wilson v. Giesen*, 956 F.2d 738, 740 (7th Cir. 1991) (citing *Wilson v. Garcia*, 471 U.S. 261, 279, 105 S. Ct. 1938, 1948-49 (1985)). "Therefore, [S]ection 1983 claims arising in Illinois are governed by a two-year statute of limitations." *Kelly v. City of Chi.*, 4 F.3d 509, 511 (7th Cir. 1993); *Love v. Sheahan*, 153 F. Supp. 2d 749, 760 (N.D. Ill. 2001). While state law sets the length of the limitations period, "federal law . . . determines the accrual of a claim." *Wilson*, 956 F.2d at 740. Pursuant to federal common law, a claim accrues "when the plaintiff knows or has reason to know of the injury giving rise to the cause of action." *Id.* With respect to § 1983 litigation, "[c]ivil rights claims . . . accrue when the plaintiff knows or should know that his or her constitutional rights have been violated." *Id.*; *see Kelly*, 4 F.3d at 511; *Love*, 153 F. Supp. 2d at 760. When addressing this accrual issue, we first endeavor to identify the injury and then "determine the date on which the plaintiff could have sued for that injury." *Behavioral Inst. of Ind., LLC*, 406 F.3d at 929; *see Kelly*, 4 F.3d at 511.

The Complaint includes allegations against Defendants Budzynski and Logli primarily concerning Plaintiff Bornhuetter-Colloton. The crux of her complaint, of course, is that she lost custody of her children on September 26, 2000, a situation extended to the present through various judicial orders dated October 13, 2000, October 23, 2001, November 7, 2001, September 23, 2003 and December 22, 2006. (Compl. ¶¶ 3, 5, 8, 10, 14-15 at 27-28.)

## A.    Defendant Budzynski

Budzynski has been the Colloton childrens' therapist since August of 1998. (Compl. ¶¶ J-K at 7-9.) On September 15, 2000, Bischoff and Budzynski "entered into a course of conduct to assure that Julia Colloton never regained custody of her children." (Compl. ¶ 4 at 26 (concerning

Bornhuetter-Colloton) & Group Ex. 13.) Plaintiffs allege that Budzynski – "an unscheduled surprise witness" – was incompetent and testified at the October 13, 2000 hearing that Bornhuetter-Colloton should not have custody, even though he had never (and still has not) met her. (*Id.* ¶¶ 8, 11 at 27.) They further claim that Budzynski helped prevent Bornhuetter-Colloton's daughters from testifying against their father in a domestic abuse proceeding in 1998. (*Id.* ¶ J at 8 (general allegations); *id.* ¶ 9 at 27 (concerning Bornhuetter-Colloton).) In April 2004, Budzynski also allegedly filed a false police report and levied witness harassment charges against Bornhuetter-Colloton. (*Id.* ¶ K at 10 (general allegations); *id.* ¶ 12 at 27 (concerning Bornhuetter-Colloton) & Group Ex. 16 at 260.)

All of these acts, however, occurred outside the 2-year limitations period. According to the Complaint, the most recent activity involving Budzynski occurred on April 22, 2004, when he allegedly filed a false police report accusing Bornhuetter-Colloton of harassing him. (*Id.*) Bornhuetter-Colloton knew or should have known the falsity of those allegations at the time they were made against her; indeed, rather than deny Budzynski's claim, she contends that she "had a right to contact any witness on the witness list in preparation for a hearing" in her custody case. (*Id.* ¶ K at 10.) Even accepting the above allegations of injury as true, we conclude that the claim against Budzynski is time-barred. Plaintiffs did not file their original complaint until May 16, 2007, more than three years after the last incident involving Budzynski, and one year after the statute of limitations had run. Accordingly, we grant his motion to dismiss.

### B. Defendant Logli

The Complaint alleges that Logli, as State's Attorney of Winnebago County, threatened to initiate criminal proceedings against Bornhuetter-Colloton in June of 1998 because she continued to complain of domestic abuse by her then-husband, despite the known history of his abuse. (*Id.* ¶

K at 9 (general allegations); *id.* ¶ 1 at 25 (concerning Bornhuetter-Colloton).) Plaintiffs further allege that there "is additional evidence . . . that the office of Paul Logli, was involved in the judicial commitment of Julia to a local State Funded Mental Facility on October 10, 1997, with no evidence, no hearing and in complete disregard of the Constitutional rights of Julia and her children." (*Id.* & Group Ex. 15.) Plaintiffs generally claim that Logli's office "did not do their job in protecting the public" because it failed to enforce protection orders violated by Cooney's ex-husband in 1994 and 1995. (*Id.* ¶ K at 10-11; *see generally* Docket No. 252, Resp. to Logli MTD.) The Complaint suggests that Logli's office was involved in Budzynski's false charges against Bornhuetter-Colloton in April 2004. (Compl. ¶ K at 10.) Plaintiffs also allege that Logli, along with Bischoff and Budzynski, wrote letters preventing Bornhuetter-Colloton's daughters from testifying in a 1998 proceeding. (*Id.* ¶ 9 at 27.)

First, we note that Plaintiffs' claims appear to be against Logli in his official capacity. The majority of these allegations explicitly allege wrongdoing by "his office," rather than by him personally. As discussed earlier, Logli may be held liable in his individual capacity only, as he is immune from suit in his official capacity pursuant to the Eleventh Amendment. Nonetheless, to the extent that Plaintiffs intended to sue him personally, we conclude that such claims are barred by the statute of limitations. The most recent event involving Logli concerns his office's processing of criminal charges filed against Bornhuetter-Colloton by Budzynski in April 2004. The other alleged misconduct occurred in 1994, 1995 and 1998 – well outside the two-year limitations period. In their responses to the present motions, Plaintiffs have not argued that we should toll the limitations period for any reason with respect to Budzynski and Logli. (*See generally* Docket No. 252, Resp. to Logli MTD; Docket No. 288, Bornhuetter-Colloton Resp.) Nor does the Complaint suggest any reason

to do so, particularly as the alleged violations were, or should have been, immediately apparent to Plaintiffs. Accordingly, we dismiss the Complaint against Budzynski and Logli as untimely.

## IV. Failure to State a Claim

In their Complaint, Plaintiffs seek to bring claims under 18 U.S.C. § 241; 42 U.S.C. § 1983; 42 U.S.C. §§ 1985-1986 and 5 ILCS 160/3(a). (Compl. at 35-36.) Various defendants contend that Plaintiffs fail to state any plausible claims for relief, and we address these challenges below.

### A. § 1983 Claims

#### I. *State Action Requirement*

"In order to state a claim under Section 1983, a plaintiff must allege that the defendants deprived him [or her] of a right secured by the Constitution or laws of the United States, and that the defendants acted under color of state law." *Brokaw*, 235 F.3d at 1009; *Lekas v. Briley*, 405 F.3d 602, 606 (7th Cir. 2005); *see* 42 U.S.C. § 1983. Generally speaking, to satisfy the second element a plaintiff must allege that defendants are state actors or that, as private citizens, they worked in concert with public officials to cause the constitutional violation.[6] *See Brokaw*, 235 F.3d at 1016. Defendants Klaung, Budzynski, Cain and Bischoff correctly argue that Plaintiffs' § 1983 claims against them must fail because they are not state actors.[7]

---

[6] As defendants note, Plaintiffs' Complaint is not exactly a model of clarity. It is unclear whether Plaintiffs assert a § 1983 claim against defendants as individuals, or only to the extent they participated in concerted activity. We shall address both possibilities.

[7] Although we already dismissed the Complaint against Bischoff and Budzynski, we consider whether they are state actors because this analysis becomes relevant in assessing the alleged § 1983 conspiracy.

### a. Non-conspiratorial Allegations

The Complaint lacks any allegation, for example, that either Klaung, Budzynski, or Cain – as individuals – are state actors. Plaintiffs allege that Klaung "was the 'therapist' selected by the father, Lorenzo Orlando, to provide therapy for the Orlando children." (Compl. ¶ D at 4.) The single paragraph describing the claim against him states that he "violated [Plaintiff Cooney's] rights and the children's rights," "[h]e testified falsely under oath, and made false statements to DCFS." (*Id.*) We agree with Klaung that the Complaint does not state a claim against him; not only is it vague, but he is plainly not a state actor in his role of private therapist and witness. In her response, Plaintiff Cooney identifies additional facts describing Klaung's incompetence, statutory violations and inappropriate behavior – but still none suggest that he was a state actor plausibly liable under § 1983. (Docket No. 248, Resp. to Klaung MTD, *passim.*)

Similarly, the allegations concerning Budzynski, described above at Section III.A., do not state a § 1983 claim against him individually as a state actor. Like Klaung, Budzynski is a private therapist, who treats the Colloton children. He testified as a witness in an October 2000 hearing. (Compl. ¶¶ J, K at 7-9 (general allegations); *id.* ¶¶ 8, 11 at 27 (concerning Bornhuetter-Colloton).) Although he encouraged the Winnebago County State's Attorney's office to forego calling the Colloton children as witnesses in a related 1998 proceeding and filed a harassment charge against Bornhuetter-Colloton with the local police, these contacts with state officials (apparently voluntary and initiated by him) do not render *him* a state official. (*Id.* ¶¶ J, K at 8, 10 (general allegations); *id.* ¶¶ 9, 12 at 27 (concerning Bornhuetter-Colloton) & Group Exs. 13 at 238, 16 at 260.)

Cain's involvement in the underlying litigation as counsel for Plaintiff Cooney's ex-husband also does not constitute "state action" for purposes of § 1983. Plaintiffs allege that Cain presented

documents to a Rockford police detective investigating a child abuse complaint in 2003. (*Id.* ¶ I at 7.) The Complaint further alleges that Cain committed fraud upon the court and violated a "gag" order by disclosing the contents of Dr. Rossiter's report to his client in June 2005. (*Id.* ¶ H at 5-6.) Plaintiff Cooney claims that because of Cain's actions, she "has not had any contact with her two sons, Christopher and Jonathan . . . since June 15, 2005, the day Christopher was removed from court in handcuffs" and transported to Swedish American Hospital for psychiatric evaluation.[8] (*Id.* ¶ 13 at 24 (concerning Cooney); *id.* ¶ 6 at 36 (conspiratorial allegations).) Standing alone, these allegations cannot establish that Cain acted under color of law. *See Offut*, 884 F. Supp. at 1191 ("The conduct of counsel, either retained or appointed, in representing clients, does not constitute action under color of state law for purposes of a section 1983 violation.").

In addition to being immune, Bischoff is not a state actor in her role as GAL. *See Golden*, No. 05 C 0283, 2005 WL 2897397, at *8-9; *Offut*, 884 F. Supp. at 1191-92; *Doe v. Bobbitt*, 665 F. Supp. 691, 694-95 (N.D. Ill. 1987). "Because a guardian ad litem owes [her] undivided loyalty to the minor whose interests [she] represents, courts have reasoned that guardians ad litem, like public defenders, do not act under color of state law in fulfilling their official duties." *Doe*, 665 F. Supp. at 695; *see Golden*, No. 05 C 0283, 2005 WL 2897397, at *9 ("[A]lthough paid by the state, child representatives are charged with representing the interests of the child and not the

---

[8] Plaintiffs repeatedly claim that, with Cain's coordination, this evaluation of Christopher was conducted without a court order. (Compl. ¶ 13 at 24 (concerning Cooney); *id.* ¶ 6 at 36 (conspiratorial allegations).) To the contrary, however, Plaintiffs' exhibits show that Judge Nordquist ordered the evaluation. (*Id.*, Group Ex. 5 at 110, Tr. of 6/15/05 Hr'g at 19 ("With respect to Christopher Orlando, he shall immediately be brought to Swedish American Hospital for a psychological evaluation. During this process there will be no contact between the Plaintiff and her family and the hospital unless Christopher's psychiatrist allows or directs such contact with mother or other relatives.").

interests of the state.").  This is particularly so where, as here, the GAL's position is not necessarily aligned – and could be adverse – to any position advanced by the state itself.  *See Golden*, No. 05 C 0283, 2005 WL 2897397, at n.9 (noting that role of GAL would be more aligned with state's position, and thus may be "state action," in proceeding initiated by state to terminate parental rights rather than in divorce proceedings).

In response to Bischoff's motion, Plaintiffs have not offered any legal or factual argument demonstrating that she should be considered a state actor by virtue of her role as GAL.  (Docket No. 253, Resp. to Bischoff MTD.)  In response to a motion to dismiss raising legal questions, a "plaintiff must identify a legal basis for a claim and make adequate legal arguments in support of it." *O'Connor v. Local 881 UFCW*, No. 04 C 5636, 2005 WL 331550, at *2 (N.D. Ill. Feb. 8, 2005); *see Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999) ("If [judges] are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning.").  Given the relevant authority, and Plaintiffs' failure to respond to this legal question, we conclude that Bischoff, acting alone, is not a state actor.

### b.    Conspiratorial Allegations

All that being said, "if a private citizen conspires with a state actor, then the private citizen is subject to Section 1983 liability." *Brokaw*, 235 F.3d at 1016.  "To establish Section 1983 liability through a conspiracy theory, a plaintiff must demonstrate that: (1) a state official and private individual(s) reached an understanding to deprive the plaintiff of [her] constitutional rights . . . and (2) those individual(s) were willful participants in joint activity with the State or its agents." *Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir. 1998) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144,

150-52, 90 S. Ct. 1598, 1605-06 (1970)); *see Brokaw*, 235 F.3d at 1016; *Bowman v. City of Franklin*, 980 F.2d 1104, 1107-08 (7th Cir. 1993). "A complaint must contain more than mere conclusory allegations of conspiracy; a factual basis for such allegations must be provided." *Bowman*, 980 F.2d at 1107; *see Ryan v. Mary Immac. Queen Ctr.*, 188 F.3d 857 (7th Cir. 1999) (affirming dismissal of conspiracy charges because bare allegations did not satisfy Rule 8). Here, Plaintiffs explicitly allege that Defendants Rossiter, Bischoff, Cain and Judge Nordquist participated in a conspiracy. (Compl. at 35-39 ("Conspiratorial Acts of Defendants").) Elsewhere in the Complaint, they also suggest that Defendants Klaung, Budzynski, Jacobsen and Logli played a part in the alleged conspiracies. (*Id.* ¶¶ J, K & N at 8, 10, 15-17 (general allegations); *id.* ¶ 9 at 27 (concerning Bornhuetter-Colloton); *id.*

¶ 9 at 39 (conspiratorial allegations).)

As discussed earlier, Defendants Judge Nordquist, Bischoff, Rossiter and Jacobsen are immune from suit.[9] Moreover, Defendants Bischoff, Cain, Klaung and Budzynski are not state actors. Accordingly, we must evaluate whether Plaintiffs have alleged an actionable conspiracy against one or more non-immune defendants, where at least one member of the conspiracy is a state actor. Specifically, we consider whether the Complaint sufficiently alleges a conspiracy between Cain, Klaung, or Budzynski (private non-immune defendants) and Rossiter, Nordquist and/or

---

[9] A private citizen may be liable for engaging in a conspiracy with a state actor, even if that state actor is immune from liability. *Dennis v. Sparks*, 449 U.S. 24, 28-29, 101 S. Ct. 183, 186-87 (1980) (concluding that "the private parties conspiring with the judge were acting under color of state law; it is of no consequence in this respect that the judge himself is immune from damages liability"); *Burrell v. City of Matoon*, 378 F.3d 642, 649-51 (7th Cir. 2004)*; Fries*, 146 F.3d at 457. As a result, the immune defendants in this case must be considered in evaluating the potential liability of private conspirators.

-24-

Jacobsen (state actors).[10] We also assess whether Plaintiffs have adequately pled a conspiracy involving these defendants and Logli, who is a state actor but not immune.[11]

After carefully reviewing the Complaint, we hold that Plaintiffs' conspiracy allegations are too vague and conclusory to state a claim. For example, Plaintiffs summarily state that "[a]s a result of the actions of Dr. Rossiter (605 evaluator), Kathryn Bischoff (Child Representative), Judge Nordquist, Daniel Cain (counsel for Lorenzo Orlando) and Brian Klaung (therapist for Orlando minors), the Plaintiff, Deborah, has not had any contact with her two sons . . . since June 15, 2005." (*Id.* ¶ 13 at 24.) The Complaint further provides that "Kathryn Bischoff and Dr. Lyle Rossiter, with the aid of Judge Nordquist, Dan Cain and Brian Klaung continued the ongoing violations of Plaintiff, Deborah's Constitutional rights." (*Id.* ¶ 9 at 39.) These statements are insufficient because "mere allegations of joint action or a conspiracy do not demonstrate that the defendants acted under color of law and are not sufficient to survive a motion to dismiss." *Fries*, 146 F.3d at 458. Rather, a complaint "must contain factual allegations suggesting that defendants reached a meeting of the minds." *Prince v. Campbell*, 314 F. Supp. 2d 793, 795 (N.D. Ill. 2004); *see Ryan*, 188 F.3d at 860 (requiring allegations describing "the form and scope of the conspiracy").

Even when we consider the allegations specific to each defendant, we find they fail to plead a conspiracy. Turning first to Cain, the Complaint alleges that he surreptitiously obtained Dr.

---

[10] We assume for purposes of this motion that Defendants Rossiter and Jacobsen are state actors, given their quasi-judicial roles as court-appointed evaluators.

[11] In light of the pleading deficiencies discussed herein, we need not reach the issue of whether Logli or Budzynski could be liable for a conspiracy where their individual conduct occurred outside the limitations period.

Rossiter's report from either Dr. Rossiter, Judge Nordquist or Bischoff, despite a gag order,[12] and then used that report as the basis of a June 2005 motion seeking custody for his client.  (Compl. ¶ H at 5 (general allegations); *id.* ¶ 3 at 20 (concerning Cooney); *id.* ¶ 4 at 36 (conspiratorial allegations).)  Plaintiffs complain that none of these individuals informed Cooney's counsel that Cain had previously received the report.  Regardless of Plaintiffs' suspicions, these allegations are entirely speculative.  *Concentra Health Servs., Inc.*, 496 F.3d at 776-77 (reiterating that the "allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a "'speculative level'") (quoting *Twombly*, 127 S. Ct. at 1964, 1973)).  Plaintiffs have not alleged that these defendants reached an agreement specifically to deprive Cooney of her constitutional rights.[13]  *See Jones v. Messina*, No. 04 C 1415, 2008 WL 192329, at *6 (C.D. Ill. Jan. 23, 2008)*; Lyttle v. Killackey*, 528 F. Supp. 2d 818, 831 (N.D. Ill. 2007).  As noted earlier, "[t]he minimum ingredient of a conspiracy . . . is an agreement to commit some future unlawful act in pursuit of a joint objective."  *Redwood v. Dobson*, 476 F.3d 462 (7th Cir. 2007).  Without an agreement, Cain cannot have entered into a conspiracy with either Rossiter or Nordquist.[14] Moreover, as the Supreme Court has observed, "being on the winning side of the lawsuit does not make a party a co-conspirator or a joint actor with the judge."  *Dennis*, 449 U.S. at 27-28, 101 S. Ct. at 186-87; *Fries*, 146 F.3d at 458.  Cain's successful representation of Cooney's ex-husband – even if assisted by other defendants – cannot, without more, form the basis of a conspiracy claim.

---

[12] Plaintiffs do not allege or explain how Cain, or other defendants, could have violated the court's June 14 "gag order" by delivering or using the report on June 13, before the order was entered.  (*See* ¶ H at 5.)

[13] Nor have Plaintiffs alleged how this conduct translates into a violation of Cooney's constitutional rights.

[14] There are no allegations connecting Cain to Jacobsen or Logli.

The Complaint is similarly scant with respect to Budzynski, the therapist for the Colloton children.[15] Although there are several references to Budzynski's joint action with Bischoff, she is not a state actor; as a pair, they cannot have formed an actionable conspiracy under § 1983. (Compl. ¶ J at 7-9 (general allegations); *id.* ¶ 4 at 26 (concerning Bornhuetter-Colloton).) Plaintiffs also allege that Budzynski, in conjunction with Bischoff and Logli, sent letters to prevent Bornhuetter-Colloton's daughters from testifying against their father. (*Id.* ¶ 9 at 27 & Group Ex. 13 at 238.) Plaintiffs' exhibits indicate that Budzynski wrote such a letter to an Assistant State's Attorney in Rockford (though not Logli) and discussed it with Bischoff, but the Complaint does not allege the necessary "meeting of the minds." While Budzynski and Bischoff apparently agreed that the girls might be harmed if forced to testify, the Complaint does not allege that Budzynski, with either Bischoff or Logli, agreed to deprive Bornhuetter-Colloton of some right.[16] For the same reason, Plaintiffs' allegation that Budzynski "used the office of State's Attorney, Paul Logli, to file witness harassment charges against Julia" fails to support a conspiracy claim. (*Id.* ¶ K at 10 (general allegations); *id.* ¶ 12 at 27 (concerning Bornhuetter-Colloton).) If anything, the Complaint provides that Budzynski acted on his own.

Turning to Klaung, the Complaint is completely devoid of any factual allegations from which

---

[15] There are no allegations connecting Budzynski to Judge Nordquist or Jacobsen.

[16] We also question whether Bornhuetter-Colloton suffered a constitutional wrong by the State's decision not to call the minor witnesses to testify at a domestic abuse proceeding against their father.

In addition, an exhibit suggests that the Assistant State's Attorney's decision to forego asking the girls to testify was independent and pre-dated Budzynski's letter. (*See* Compl., Group Ex. 13 at 239, Bischoff Ltr. to Budzynski (stating that Assistant State's Attorney "will not be calling the children" but "if you still wish to send the letter . . . it would be appropriate").) If so, the letter would not have caused any deprivation of right.

we might infer a conspiracy. Other than the generic conspiracy allegations discussed above, there are no factual allegations tying Klaung's conduct to any other defendant. (*Id.* ¶ D at 4 (general allegations); *id.* ¶ 9 at 24 (concerning Cooney); *id.* ¶ 13 at 39 (conspiratorial allegations).) *See Ryan*, 188 F.3d at 860.

Finally, we conclude that the Complaint fails to state a conspiracy claim against Logli. Plaintiffs have not alleged any connection between Logli and Rossiter, Cain, Judge Nordquist, Klaung or Jacobsen. We have already addressed the allegations of joint action among Logli, Budzynski and Bischoff. Plaintiffs' § 1983 conspiracy claims are dismissed.

### ii.      *Personal Involvement Requirement*

At this juncture, there are two individual defendants remaining: Edwin McEwen and Brent Johnson of DCFS. Both contend that the Complaint fails to state a claim against them because it does not allege that they were personally involved in the alleged constitutional deprivations.

As they correctly point out, "a plaintiff only may bring a § 1983 claim against those individuals personally responsible for the constitutional deprivation." *Doyle v. Camelot Care Ctrs., Inc.*, 305 F.3d 603, 614 (7th Cir. 2002); *see Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001); *Gossmeyer v. McDonald*, 128 F.3d 481, 495 (7th Cir. 1997). "Moreover, under § 1983, a plaintiff may not rely on the doctrine of *respondeat superior* to hold supervisory officials liable for the misconduct of their subordinates. Rather, the supervisory officials also must have had some personal involvement in the constitutional deprivation, essentially directing or consenting to the challenged conduct." *Doyle*, 305 F.3d at 614; *see Sanville*, 266 F.3d at 740; *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001).

Here, the Complaint simply does not allege that McEwen or Johnson had a hand in the purported wrongdoing. In fact, Plaintiffs have not identified *any* personal conduct concerning McEwen, and we previously dismissed the official capacity claim against him at Section II.A.i. As to Johnson, the Complaint alleges that he "signed off on all the DCFS reports in re: Deborah; Julia; and Rhonda cases without regards to ensure that the reports are accurate, complete, and investigated appropriately following the Department Administrative Rules." (Compl. ¶ M at 14.) Plaintiffs relatedly claim that one of Johnson's subordinates, DCFS investigator Robert Coffey, failed to comply with numerous regulations in Cooney's case. (*Id.* ¶ E at 5.) Johnson, however, cannot be held liable for Coffey's shortcomings without personal involvement, and the Complaint does not allege that Johnson actually participated in the DCFS investigations. *See Chavez*, 251 F.3d at 651. Plaintiffs do not claim that Johnson knew of, or consented to, the alleged faults contained in the reports he signed. To the contrary, the Complaint alleges that he signed the reports ignorant of any errors because he neglected to ensure their accuracy. Johnson cannot be held liable for negligence, however. "[S]upervisors who are merely negligent in failing to detect and prevent subordinates' mistakes are not liable. . . . The supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Id.* (quoting *Jones v. City of Chi.*, 856 F.2d 985, 992-93 (7th Cir. 1988)); *see Sanville*, 266 F.3d at 740; *Gossmeyer*, 128 F.3d at 495. Because Plaintiffs have not alleged that Johnson knew about the alleged misconduct and then acted with "deliberate, reckless indifference," we dismiss the § 1983 claim against him. *Id.*

### iii.    *Policy or Custom Requirement for Municipalities*

In addition to suing various individuals as discussed above, Plaintiffs also bring their § 1983 action against the Rockford Public Schools. In response, the Board of Education of the

Rockford School District ("School District") filed a motion to dismiss. Although the School District's sparse motion itself is unconvincing, we dismiss the claim due to an obvious pleading deficiency.

Plaintiffs' claim against the School District stems from the alleged actions of Kristin Schroeder, who taught Griffith-Kraut's daughter (Cheyenne) at the Spring Creek Elementary School, and Lynell Kenny, the school principal.[17] (Compl. ¶ O at 17-19 (general allegations); *id.* ¶¶ 3, 8 at 30, 32 (concerning Griffith-Kraut).) Plaintiffs allege that Schroeder "engaged in very questionable behavior with the father of Cheyenne over a period" spanning 2003 and 2004. (*Id.* ¶ O at 17.) Plaintiffs further allege that Schroeder filed a knowingly false DCFS report against Griffith-Kraut in August 2004, although Schroeder and Kenny failed to report potential incidents of abuse against Cheyenne's father. (*Id.* ¶ O at 18.) Most significantly, Plaintiffs allege that Schroeder and Kenny (along with Mrs. Greenburg, another teacher) failed to keep Griffith-Kraut informed of Cheyenne's progress, despite repeated requests, and refused access to Cheyenne during school hours. (*Id.* ¶ O at 18-19.) For example, in early 2007, Kenny "refused to allow [Griffith-Kraut] to have any contact" with Cheyenne; Kenny prevented her from delivering a Valentine's Day card and denied her "request to observe Cheyenne in her classroom." (*Id.* ¶ 8 at 32.)

"Recovery against a governmental entity – including a school board or school district – under . . . § 1983 may not be based on *respondeat superior*." *Juniel v. Park Forest-Chi. Heights Sch. Dist. 163*, 176 F. Supp. 2d 842, 848 (N.D. Ill. 2001); *see Moore v. Bd. of Educ. of City of Chi.*, 300 F. Supp. 2d 641, 645 (N.D. Ill. 2004); *Burke v. Chi. Sch. Reform Bd. of Trs.*, 169 F. Supp. 2d 843, 846

---

[17] There are no allegations against the School District concerning the other plaintiffs. In addition, Plaintiffs have not sued the school officials on an individual basis.

(N.D. Ill. 2001). In other words, "[m]unicipalities, including school boards, may not be held liable under § 1983 because they employed the tortfeasor acting within the scope of his or her employment." *Burke*, 169 F. Supp. 2d at 846 (citing *Cornfield v. Consol. High Sch. Dist. No. 230*, 991 F.2d 1316, 1324 (7th Cir. 1993)); *see Monell v. Dept. of Soc. Servs. of N.Y.*, 436 U.S. 658, 690-91, 98 S. Ct. 2018, 2036 (1978). "Instead, a plaintiff must show that the deprivation of civil rights was caused by some official custom or policy of the municipality." *Moore*, 300 F. Supp. 2d at 645; *Juniel*, 176 F. Supp. 2d at 848. Plaintiffs can meet this requirement by alleging one of three types of a custom or policy:

> (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a 'custom or usage' with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policy-making authority.

*Burke*, 169 F. Supp. 2d at 846; *see Brokaw*, 235 F.3d at 1016; *Moore*, 300 F. Supp. 2d at 645; *Juniel*, 176 F. Supp. 2d at 848. Plaintiffs have not alleged that the School District maintained an express policy or permitted a widespread practice that encouraged, enabled or otherwise caused Griffith-Kraut's alleged injuries. (Compl. ¶ O at 17-19.)

Plaintiffs also do not allege that Cheyenne's teachers or Principal Kenny had "final policy-making authority" such that their conduct, in effect, became School District policy. *Burke*, 169 F. Supp. 2d at 846-47; *see also Gernetzke v. Kenosha Unified Sch. Dist. No. 1*, 274 F.3d 464, 468 (7th Cir. 2001) ("The question is whether the promulgator, or the actor, as the case may be – in other words, the decisionmaker – was at the apex of authority for the action in question."); *Brandt v. Bd. of Educ. of City of Chi.*, 420 F. Supp. 2d 921, 937 (N.D. Ill. 2006) (starting that the "public officer must be responsible for establishing final government policy respecting such activity before the

municipality can be held liable") (internal quotation omitted).  Even if we infer from the Complaint that Principal Kenny was "the senior *school* official involved, that does not make her the senior *District* policymaker" concerning the alleged misconduct.  *Landstrom v. Barrington Sch. Dist. 220*, 739 F. Supp. 441, 445 (N.D. Ill. 1990) (concluding that principal was not a final policymaker with respect to school-initiated child abuse investigations); *see also Howard v. Bd. of Educ. of Sycamore Comty. Unit Sch. Dist. No. 427*, 893 F. Supp. 808, 816 n.7 (7th Cir. 1995) (noting that defendant "as the high school principal, does not, as alleged, constitute, under Illinois law . . . a policymaker of the Board") (internal citation omitted); *Brandt*, 420 F. Supp. 2d at 937 (concluding the principal was not a final policymaker concerning school conduct and discipline under applicable regulations); *Wood v. Chi. Bd. of Educ.*, No. 07 C 4742, 1998 WL 832656, at *4, n.1 (N.D. Ill. Nov. 20, 1998) (holding that defendant principals "are not policymakers under Illinois law" for purposes of § 1983 claim against school board).  Because Plaintiffs failed to allege that a School District "policy or custom" violated Griffith-Kraut's rights, we dismiss their § 1983 claim against the School District.

**B.      Claim under 42 U.S.C. § 1986**

Having disposed of Plaintiffs' § 1983 claims, we address their related claims under another civil rights statute, 42 U.S.C. § 1986.  Section 1986 authorizes a damages action against individuals who know about a conspiracy to commit wrongs under 42 U.S.C. § 1985, and who have the power to prevent that misconduct, but who neglect or refuse to do so.  Liability under § 1986 is thus derivative of liability under § 1985.[18]  *Perkins v. Silverstein*, 939 F.2d 463, 472 (7th Cir. 1991) ("[T]here can be no cause of action under § 1986 absent a viable § 1985 claim."); *see also*

_____

[18] Plaintiffs may have intended to bring a § 1985 claim either instead of, or in addition to, the § 1983 conspiracy claim discussed above.

*Rodgers v. Lincoln Towing Serv., Inc.*, 771 F.2d 194, 203 (7th Cir. 1985); *Selep v. City of Chi.*, 842 F. Supp. 1068, 1071 (N.D. Ill. 1993).

Section 1985 permits a private right of action for individuals injured by three types of conspiracies. 42 U.S.C. § 1985. Although Plaintiffs do not specify which provision might be the basis for their presumed § 1985 claim, only § 1985(3) is applicable.[19] To establish a claim for civil conspiracy under § 1985(3), a plaintiff must allege:

> (1) the existence of a conspiracy, (2) a purpose of depriving a person or class of persons of equal protection of the laws, (3) an act in furtherance of the alleged conspiracy, and (4) an injury to person or property or a deprivation of a right or privilege granted to U.S. citizens.

*Brokaw*, 235 F.3d at 1024. To satisfy the second element of this *prima facie* case, a plaintiff must also allege "some racial, or otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Green v. Benden*, 281 F.3d 661, 665 (7th Cir. 2002); *Brokaw*, 235 F.3d at 1024; *Bowman*, 980 F.2d at 1109; *Rodgers*, 771 F.2d at 203. This requirement of class-based animus is narrowly construed, and the Seventh Circuit recognizes "classes based on race, ethnic origin, sex, religion and political loyalty . . . as possibly supporting a Section 1985(3) claim." *Rodgers*, 771 F.2d at 203 (internal quotation omitted); *Brokaw*, 235 F.3d at 1024.

Like their § 1983 claim, Plaintiffs' § 1985(3) claim fails because they have not adequately alleged the existence of a conspiracy. *Copeland v. Northwestern Mem'l Hosp.*, 964 F. Supp. 1225,

---

[19] Section 1985(1) permits an action against conspirators who prevent federal officers from discharging their duties. Section 1985(2) generally applies to conspiracies to obstruct justice by intimidating a party, juror or witness for an action pending in federal court. Section 1985(2) also applies to conspiracies to obstruct "the due course justice in any State or Territory, with the intent to deny any citizen the equal protection of the laws." As a result, § 1985(2) – like § 1985(3) – requires "that the conspiracy be motivated by 'racial or some other type of invidious, class-based discrimination.'" *Lara v. Sheahan*, No. 06 C 669, 2007 WL 1030304, at *6 (N.D. Ill. Mar. 30, 2007) (quoting *Lowe v. Letsinger*, 772 F.3d 544, 547 (7th Cir. 1997)).

1235 (N.D. Ill. 1997) ("It is not enough for a section 1985 plaintiff to plead mere conclusory allegations of a conspiracy."); *see also Green*, 281 F.3d at 665 (requiring plaintiff to prove "that the conspirators agreed to inflict injury upon him" in accordance with a single plan, "the general nature and scope of which was known to each conspirator"). Moreover, they do not claim that defendants were motivated by any class-based animus. That is, the Complaint does not state that defendants engaged in the alleged violations *because of* Plaintiffs' "race, ethnic origin, sex, religion [or] political loyalty." *Rodgers*, 771 F.2d at 203. "In a § 1985 case, such an omission dooms a plaintiff's claim." *Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 632 (7th Cir. 1999); *Chambers v. The Habitat Co.*, No. 99 C 2095, 2001 WL 1104615, at *8 (N.D. Ill. Sept. 18, 2001).

A § 1985 claim cannot stand on Plaintiffs' class action allegations, in which they seek damages for themselves and "more mothers who have lost custody of their children and suffered other abuses at the hands of one or more of the defendants." (Compl. ¶ 2 at 33.) "[T]he complaint is styled as a class action, but to say that a group of individuals has been harmed is distinct from saying that the defendants' actions were motivated by animus against a particular class of individuals." *Chambers*, No. 99 C 2095, 2001 WL 1104615, at *8; *see Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268-69, 113 S. Ct. 752, 759-60 (1993) (concluding that animus requirement refers to "a purpose that focuses on [a class, i.e.,] women *by reason of their sex*" and that such intent cannot "be determined solely by effect"). "To assert the necessary class-based animus, a plaintiff 'must be able to identify a class with common characteristics that raises the inference that they might be protected,'" rather that point to a group "defined entirely by the defendants' actions." *Wright v. Vill. of Phoenix*, No. 97 C 8796, 2000 WL 246266, at *8 (N.D. Ill.

-34-

Feb. 25, 2000) (quoting *Bowman*, 980 F.2d at 1109); *see also Rodgers*, 771 F.2d at 203 (concluding

that a class consisting of individuals whose cars were towed by a particular company from a certain

neighborhood "is not the readily identifiable group" required by § 1985). Because the Complaint

does not allege that Defendants deprived Plaintiffs' rights because they fall within a protected

class,[20] the § 1985 and related § 1986 claims are dismissed.

### C.       Claim under 18 U.S.C. § 241

Plaintiffs allege a violation of 18 U.S.C. § 241, entitled "Conspiracy against rights."

(Compl., Count I, ¶ a at 34.) This particular statute, however, is a criminal statute and "it is well

settled no private right of action inheres" in criminal provisions. *Pawelek v. Paramount Studios*

*Corp.*, 571 F. Supp. 1082, 1083 (N.D. Ill. 1983); *see Jeffries v. Dutton & Dutton P.C.*, No. 05 C

4249, 2006 WL 1343629, at *7 (N.D. Ill. May 11, 2006); *Jones v. GES Exposition Servs., Inc.*, No.

02 C 6243, 2004 WL 2011396, at *7, n.5 (N.D. Ill. Sept. 7, 2004). Only a federal prosecutor

representing the United States can bring a criminal complaint for violation of this statute. *Jeffries*,

No. 05 C 4249, 2006 WL 1343629, at *7; *Jones*, No. 02 C 6243, 2004 WL 2011396, at *7, n.5.

Because Plaintiffs may not prosecute a criminal action, this claim is dismissed.

### D.       Claim under 5 ILCS 160/3

For similar reasons, Plaintiffs' claim under 5 ILCS 160/3 is dismissed. This Illinois statute,

referred to as the State Records Act, provides that all persons "have the right of access to any public

records" unless otherwise restricted. 5 ILCS 160/3(a); *see Family Life League v. Dep't of Pub. Aid*,

---

[20] The Complaint generally suggests that defendants acted out of personal bias or greed, and such allegations cannot state a claim under § 1985(3). *See Nowicki v. Ullsvik*, 69 F.3d 1320, 1325 (7th Cir. 1995) (affirming dismissal of complaint that alleged "that the purpose of the conspiracy was motivated for economic and professional purposes"); *Rodgers*, 771 F.2d at 203.

112 Ill. 2d 449, 456, 493 N.E.2d 1054, 1057-58 (Ill. 1986) (noting that the "highly desirable goal" of this statue is to ensure that "the public knows how its tax dollars are being spent"). The Illinois Code, however, does not suggest that a private citizen may sue for alleged violations. To the contrary, violations appear to be criminal matters. *See, e.g.,* 5 ILCS 160/24 (requiring Auditor General to ensure compliance with State Records Act and noting that violations of 5 ILCS 160/3(b) are Class B misdemeanors). Moreover, the only allegations supporting such a claim relate to Judge Nordquist, who is immune. (Compl. ¶ 9 at 22-23.)

## CONCLUSION

For the reasons set forth above, we grant defendants' motions to dismiss. (*See* Docket Nos. 180, 183, 185, 191, 198, 202, 208, 212, 221 & 230.) The various motions to transfer venue are denied as moot. This action is terminated. It is so ordered.

Honorable Marvin E. Aspen
U.S. District Court Judge


Dated: August 20, 2008